## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

CARRIE A. PITTS,                                    Case No. 1:19-cv-1003
     Plaintiff,                                Cole, J.
                                                    Litkovitz, M.J.
     vs.


COMMISSIONER OF                                     **REPORT AND**
SOCIAL SECURITY,                                    **RECOMMENDATION**
     Defendant.


Plaintiff Carrie A. Pitts brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB"). This matter is before the Court on plaintiff's Statement of Errors (Doc. 12), the Commissioner's response in opposition (Doc. 18), and plaintiff's reply memorandum. (Doc. 19).

## I. Procedural Background

Plaintiff filed her application for DIB in May 2015, alleging disability since April 15, 2014, due to herniated discs at L4-5 and L5-S1, hypertension, major depressive disorder, and anxiety disorder. The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge ("ALJ") Christopher Tindale. Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ hearing on May 18, 2018. On August 7, 2018, the ALJ issued a decision denying plaintiff's DIB application. This decision became the final decision of the Commissioner when the Appeals Council denied review on September 25, 2019.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548

(6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy.  *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th

Cir. 1999).

### B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] last met the insured status requirements of the Social Security
> Act on December 31, 2017.
>
> 2. Through the date last insured, the [plaintiff] did not have an impairment or
> combination of impairments that met or medically equaled the severity of one of
> the listed impairments in 20 CFR Part 404, Subpart P, Appendix (20 CFR
> 404.1571 *et seq.*).
>
> 3. Through the date last insured, the [plaintiff] had the following severe
> impairments: disorders of the spine; degenerative joint disease; arthritis; diabetes
> mellitus; fibromyalgia; obstructive sleep apnea; obesity; a mood disorder; and an
> anxiety disorder (20 CFR 404.1520(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that
> meets or medically equals the severity of one of the listed impairments in 20 CFR
> Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that,
> through the date last insured, the [plaintiff] had the residual functional capacity to
> perform sedentary work as defined in 20 CFR 404.1567(a) except as follows: the
> [plaintiff] could occasionally climb ramps and stairs, but never climb ladders,
> ropes, or scaffolds. The [plaintiff] could occasionally stoop, kneel, crouch, and
> crawl. She must avoid concentrated exposure to wetness and high humidity. She
> must avoid all exposure to dangerous hazards, such as unprotected heights and
> dangerous moving machinery. The [plaintiff] could occasionally reach overhead
> with the left upper extremity. The [plaintiff] could frequently handle and finger.

Further, she is limited to simple, routine tasks in a work environment free of fast production rate or pace work. The [plaintiff] should avoid all contact with the public. She could tolerate occasional contact with supervisors, and only occasional and superficial contact with co-workers, with superficial contact defined as no tandem tasks. Finally, the [plaintiff] is limited to occasional changes in the work setting and occasional decision making.

6. Through the date last insured, [plaintiff] was unable to perform any past relevant work (20 CFR 404.1565).[1]

7. The [plaintiff] was born [in] ... 1974 and was 43 years old, which is defined as a younger individual age 18-44, on the date last insured. (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404 Subpart P. Appendix 2).

10. Through the date last insured, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that the [plaintiff] could have performed (20 CFR 404.1569, 404.1569(a).[2]

11. The [plaintiff] was not under a disability, as defined in the Social Security Act, at any time from April 15, 2014, the alleged onset date, through December 31, 2017, the date last insured (20 CFR 404.1520(g)).

(Tr. 19-31).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

---

[1] Plaintiff's past relevant work was as a licensed practical nurse, a registered nurse, and a case manager, all medium, skilled positions, and a nurse supervisor, a light, skilled position. (Tr. 30, 64-65).

[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative sedentary, unskilled occupations such as document specialist (80,000 jobs in the national economy), inspector (51,000 jobs in the national economy), and copy examiner (45,000 jobs in the national economy). (Tr. 31, 66).

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff alleges two issues: that the ALJ erred by failing to (1) include all the restrictions in the residual functional capacity ("RFC") by departing from the opinions of State

agency psychological consultants Dr. Karla Voyten and Dr. Jaime Lai, and (2) properly assess certified nurse practitioner Cindy Hammond's medical opinion evidence. (Docs. 12, 19).[3]  In response, the Commissioner alleges that the ALJ reasonably evaluated the opinion of Ms. Hammond and contends that the ALJ's RFC determination is supported by substantial evidence. (Doc. 18).

### 1. The Administrative Law Judge's RFC determination

The Social Security regulations vest the ALJ with responsibility "for reviewing the evidence and making administrative findings of fact and conclusions of law."  20 C.F.R. § 404.1513a.  In determining disability, the ALJ will consider the medical opinions in the case record along with the other relevant evidence.  20 C.F.R. § 404.1527(b) (citing 20 C.F.R. § 404.1520b).  While physicians may render an opinion on a claimant's functional capacity, the ultimate responsibility for determining a claimant's capacity to work lies with the Commissioner. *See Rudd v. Comm'r of Soc. Sec.,* 531 F. App'x 719, 728 (6th Cir. 2013) (the Commissioner is ultimately responsible for assessing a claimant's RFC).  A claimant's RFC is an assessment of the most that a claimant "can still do despite [her] limitations."  20 C.F.R. § 404.1545(a)(1).  The Social Security regulations vest the ALJ with the responsibility of assessing an individual's RFC. *See* 20 C.F.R. § 404.1546(c) (the responsibility for assessing a claimant's RFC at the administrative hearing level lies with the ALJ).  The ALJ is responsible for assessing a claimant's RFC based on all of the relevant medical and other evidence.  20 C.F.R. § 404.1545(a)(3).  This includes weighing the relevant medical opinions of record.  *Coldiron v.*

---

[3] Plaintiff alleges no error concerning the ALJ's weighing of the remaining medical opinions consisting of Dr. Darren Adams (Tr. 28), Dr. Brian Griffiths (Tr. 29), and the State agency *medical* consultants (Tr. 28).

*Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010).  *See also* 20 C.F.R §

404.1527(c)(2).  "Physicians render opinions on a claimant's RFC, but the ultimate responsibility

for determining a claimant's capacity to work lies with the Commissioner."  *Profitt v. Comm'r.*

*of Soc. Sec.*, No. 1:13-cv-679, 2014 WL 7660138, at *6 (S.D. Ohio Dec. 12, 2014), *report and*

*recommendation adopted*, 2015 WL 248052 (S.D. Ohio Jan. 20, 2015) (citations omitted).  *See*

*also* 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding an individual's RFC is

reserved to the Commissioner).

      In this case, the ALJ's RFC finding provided: "The [plaintiff] should avoid all contact

with the public.  *She could tolerate occasional contact with supervisors*, and only occasional and

superficial contact with co-workers, with superficial contact defined as no tandem tasks."  (Tr.

22) (emphasis added).  Plaintiff alleges the ALJ erred by addressing only the *frequency* of

contact plaintiff could have with supervisors and failing to include a limitation concerning the

"nature or quality" of plaintiff's interactions with supervisors.  (Doc. 12 at PAGEID 1856-1859).

Drs. Voyten and Lai opined that plaintiff was limited to occasional "superficial" social

interactions.  (Tr. 80, 98).  Plaintiff contends that the ALJ, however, failed to include a

superficial contact limitation with supervisors in the RFC, which was contrary to Drs. Voyten

and Lai's opinion that plaintiff was limited to superficial contact in all social interactions.

      It is well-established that an ALJ is not required to adopt a medical source's opinion on

limitations verbatim in assessing a claimant's RFC.  *See* SSR 96-5p, 1996 WL 374183, at *5[4]

("Although an adjudicator may decide to adopt all of the opinions expressed in a medical source

---

[4] The undersigned acknowledges that SSR 96-5p was rescinded effective March 27, 2017.  Nevertheless, the undersigned finds that the Ruling applies to plaintiff's claim, which was filed *before* the effective date of the rescission.

statement, a medical source statement must not be equated with the administrative finding known as the RFC assessment"). "Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). "Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). Therefore, even if Drs. Voyten and Lai's opinion can be construed as requiring "superficial" interactions with supervisors, the ALJ was not required to accept verbatim this limitation.

In any event, the ALJ gave only "some weight" to the State agency psychologists' opinions, indicating he was not adopting their opinions in full. (Tr. 28). Dr. Voyten and Dr. Lai opined that plaintiff was "moderately limited" in her ability to interact with the general public, "not significantly limited" in her ability to ask simple questions or request assistance, and only "moderately limited" in her ability to accept instructions and respond appropriately to criticism from supervisors. (Tr. 80, 97). The ALJ explained that Drs. Voyten and Lai's limitations were "generally consistent" with his RFC finding and he provided "somewhat different limitations to better quantify [plaintiff's] workplace restrictions and abilities." (Tr. 28-29).

Moreover, plaintiff does not explain how the ALJ's limitation of occasional contact with supervisors, without further limitation, is not supported by substantial evidence. The ALJ explained that plaintiff was moderately restricted in maintaining social functioning; her social

8

interactions appeared to be free of excessive irritability, sensitivity, argumentativeness, or suspiciousness; she interacted well with her clinicians, who generally noted that she was pleasant and cooperative; and she generally exhibited no problems getting along well with providers and staff. (Tr. 27).

Plaintiff has not shown that the ALJ erred by failing to fully account for her alleged impairments and resulting limitations in the RFC finding. Plaintiff has not shown, or identified any evidence in the record, that the evidence before the ALJ required the inclusion of greater limitations than those found by the ALJ with regard to contact with supervisors. Accordingly, the ALJ's RFC is supported by substantial evidence, and plaintiff's assignment of error regarding the ALJ's RFC assessment should be overruled.

While not assigned as a separate, specific error, plaintiff additionally argues that the hypothetical presented to the VE fails to fully reflect all of plaintiff's limitations, and therefore, the ALJ's Step 5 finding is without substantial evidentiary support in the record. (Doc. 12 at PAGEID 1859). At Step 5 of the sequential evaluation process, the burden shifts to the Commissioner "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Jones v. Commissioner of Social Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The Commissioner may meet his burden through reliance on a VE's testimony in response to a hypothetical question. To constitute substantial evidence in support of the Commissioner's burden, the hypothetical question posed to the vocational expert must accurately reflect the claimant's physical and

mental limitations.  *See Ealy*, 594 F.3d at 516; *Howard v. Commissioner of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002).

Aside from her argument related to the ALJ's alleged failure to include a "superficial" contact limitation with supervisors, plaintiff fails to identify or cite to specific limitations the ALJ failed to include in the hypothetical presented to the VE that would otherwise make it improper.  Because plaintiff discussed this alleged error in the same section discussing the ALJ's alleged failure to include the limitations expressed by Dr. Voyten and Dr. Lai in the RFC finding, the Court construes plaintiff's argument as alleging that the ALJ's hypothetical to the VE failed to fully reflect all of plaintiff's limitations *as expressed by Dr. Voyten and Dr. Lai*.

But, as explained above, the ALJ is not required to accept verbatim the limitations assessed by Drs. Voyten and Lai.  *Reeves*, 618 F. App'x at 275.  Nor has plaintiff cited to *any* evidence in the record supporting her claims that she has additional physical and mental limitations beyond those included in the ALJ's hypothetical question to the VE.  Plaintiff has not shown that the evidence before the ALJ required the inclusion of greater limitations on plaintiff's contact with supervisors than those found by the ALJ.   Accordingly, because plaintiff fails to demonstrate how the ALJ's hypothetical to the VE did not accurately portray her physical and mental impairments, this alleged error is without merit.

### 2.  The Administrative Law Judge's assessment of Ms. Hammond's opinions

Plaintiff also argues that the ALJ erred by placing "little weight on the medical source statement completed by Cindy Hammons (sic), a board certified psychiatric mental health nurse practitioner."  (Doc. 12 at PAGEID 1859).  Plaintiff contends that the ALJ's failure to give

proper weight to Ms. Hammond's opinion was inconsistent with the record when viewed in its entirety. (*Id.* at PAGEID 1863). In support, plaintiff argues that the ALJ "cherry pick[ed]" evidence favorable to his decision and failed to consider or discuss evidence contrary to his decision. (*Id.* at PAGEID 1864). Citing to the ALJ's decision, plaintiff further argues that the ALJ's determination that Ms. Hammond "did not pursue an aggressive treatment course" was an insufficient reason for not giving Ms. Hammond's opinion greater weight. (*Id.* at PAGEID 1862; Tr. 54). In response, the Commissioner argues that plaintiff's argument amounts to a recitation of the evidence and a disagreement with how the ALJ weighed Ms. Hammond's opinion. The Commissioner contends that this is not a basis to set aside the ALJ's findings. (Doc. 18).

### a. Plaintiff's mental health treatment

Plaintiff sought mental health treatment with psychiatric mental health nurse practitioner Ms. Hammond from May 11, 2015 to December 11, 2017. (Tr. 470-74, 1619-1730). On July 13, 2015, Ms. Hammond reported that plaintiff was taking her medication as prescribed and denied any side effects from the medication. (Tr. 1726). Ms. Hammond noted that although plaintiff's mood and affect were depressed and anxious, her thought processes remained intact. (Tr. 1729). Ms. Hammond instructed plaintiff to, among other things, take her medications as prescribed, consume a healthy diet, exercise vigorously every day if approved by her primary care physician, practice structured relaxed exercise daily, avoid all coffee consumption, and avoid drinking any alcohol. (Tr. 1729-1730). On August 11, 2015, Ms. Hammond said that plaintiff is "feeling better" and is taking her medication "as prescribed." (Tr. 1721). On

September 11, 2015, Ms. Hammond recorded that plaintiff "was feeling worse," "crying," and

having "fleeting suicidal thoughts."  (Tr. 1716).  On October 12, 2015, Ms. Hammond said that

plaintiff was having drug side effects of drowsiness, sexual dysfunction, and lack of interest.

(Tr. 1711).  Plaintiff continued to have fleeting suicidal thoughts.  (*Id*.).  Ms. Hammond provided

counseling to plaintiff to improve plaintiff's attitude, perspective, motivation, and positive

energy.  (*Id*.).

Following this session with Ms. Hammond, plaintiff was psychiatrically hospitalized on

two occasions, once at the Ohio Hospital for Psychiatry from November 3, 2015 to November 8,

2015 for overdosing on Ativan (Tr. 1780-1802); and the second at The Christ Hospital from

December 9, 2015 to December 14, 2015 due to an increase in depression with suicidal ideation.

(Tr. 646-756).  However, despite these hospitalizations, Ms. Hammond's treatment goals

remained the same.  (*See* Tr. 1714-1715, 1710, 1704, 1698, 1692-1693, 1687).

On January 12, 2016, Ms. Hammond reported that plaintiff was feeling "better" and

denied any drugs side effects.  (Tr. 1706).  Ms. Hammond reported that plaintiff overdosed on

multiple prescribed medications.[5]  (*Id*.).  Ms. Hammond noted that plaintiff overdosed because

she was feeling "anxious and stressed" over marital problems.  (*Id*.).  Plaintiff "feels that she is

better equipped to deal with her stressors now."  (*Id*.).  Ms. Hammond stated that plaintiff needs

"individual Cognitive Behavioral Therapy ASAP."  (Tr. 1705).

On March 7, 2016, Ms. Hammond noted that plaintiff was feeling worse and suffered

drowsiness and weight gain as side effects from her medication.  (Tr. 1700).  Plaintiff was tearful

---

[5] The ALJ noted that although plaintiff claimed "that she had taken excessive medication in an overdose attempt, []
her toxicity screen appeared negative for the alleged medications.  See Exhibits 14F/p8 and 32F/p3."  (Tr. 26).

and admitted suicidal thoughts but told Ms. Hammond that she otherwise felt safe.  (*Id*.).  On

March 23, 2016, plaintiff was feeling better and reported no medication side effects.  Plaintiff

reported that she saw her therapist at Hope Source for the first time and made goals for herself.

Ms. Hammond provided plaintiff with "active listening and emotional support."  (Tr. 1694).  On

April 18, 2016, plaintiff reported that she had been very depressed over the last week and had

thoughts of wrecking her car while she was driving but accordingly dismissed the thoughts.  (Tr.

1692).  Ms. Hammond said that plaintiff had been arguing with her husband and family and feels

worthless.  (Tr. 1688).  On June 16, 2016, Ms. Hammond noted that plaintiff was feeling worse

and was taking her medication "less frequently than prescribed."  (Tr. 1683).  Plaintiff told Ms.

Hammond that she had not slept for five days due to an "irrational fear of snakes."  (*Id*.).

On July 7, 2016, Ms. Hammond said that plaintiff was taking her medication as

prescribed, but plaintiff was disappointed about her weight gain.  (Tr. 1677).  Ms. Hammond

reported that plaintiff had "daily thoughts of suicide" and had "been seeing black things like

shadows."  (*Id*.).  Ms. Hammond also noted that plaintiff's marriage relationship was improving.

(*Id*.).  On August 2, 2016, Ms. Hammond again provided active listening and support to plaintiff.

(Tr. 1672).  Ms. Hammond reported that plaintiff was feeling better and her mother, brother, and

teenage son had been supportive and helpful.  (*Id*.).  On October 12, 2016, Ms. Hammond

reported that plaintiff had suicidal thoughts, but she "knows that she can't act on these feelings

because everyone needs her."  (*Id*.).  Ms. Hammond said that plaintiff had been "[m]uch more

anxious" because plaintiff had a complication of infection from her hysterectomy surgery, had

not heard back on her disability claim, recently filed for bankruptcy, had her car repossessed, and recently discovered that her mother had cancer and her father had two surgeries. (Tr. 1667).

On January 3, 2017, Ms. Hammond was "feeling worse" possibly because her father was hospitalized for a week before Christmas and her mother was undergoing chemotherapy and radiation treatment. (Tr. 1661). Ms. Hammond noted that plaintiff was not seeing her therapist at Hope Source because "she owes money and they won't see her." (*Id*.). On January 31, 2017, Ms. Hammond said that plaintiff had suicidal thoughts recently, but denied any suicidal thoughts during the session. (Tr. 1659). Ms. Hammond reported that plaintiff was alert, oriented, and pleasant. (*Id*.). On March 24, 2017, although plaintiff was "encouraged" because she lost weight, plaintiff also reported that she had been angry, thrown things, and "talked mean to family members and can't stand being in her own skin." (Tr. 1650). Ms. Hammond said that plaintiff felt hopeless and helpless because of her financial situation and not being able to work. (*Id*.). Plaintiff affirmed that she would not act out on her suicidal thoughts. (*Id*.).

On April 24, 2017, Ms. Hammond commended plaintiff on her weight loss. (Tr. 1641). Ms. Hammond also reported that although plaintiff was smiling and feeling encouraged, plaintiff was busy helping her mother in her radiation treatments. (*Id*.). On July 17, 2017, Ms. Hammond reported that plaintiff was 0/10 on the Depression, Anxiety, Mania, OCD, and Pain Intensity Scales. (Tr. 1637). Ms. Hammond provided plaintiff with active listening and emotion support. (*Id*.). On September 7, 2017, Ms. Hammond reported that plaintiff was alert and oriented and had a pleasant personality. (Tr. 1631). Plaintiff was still feeling stressed. (*Id*.). Plaintiff said that she drove to Wisconsin over the weekend to see her sister. (*Id*.).

14

On October 11, 2017, Ms. Hammond said that plaintiff was feeling better, alert and oriented, and had a positive attitude.  (Tr. 1625).  Ms. Hammond noted that plaintiff was exercising and had lost four pounds.  (*Id*.).  December 11, 2017 notes reflect that plaintiff had been sleeping well, was alert and oriented, was doing well with her weight loss, and was active at the Life Center for three to four days a week.  (Tr. 1619).

Ms. Hammond completed a questionnaire in July 2017 where she listed plaintiff's diagnoses as Bipolar I Disorder and Generalized Anxiety Disorder.  (Tr. 775-77).  Ms. Hammond reported that plaintiff's symptoms included severe mood swings, poor concentration, worry, guilt, hopelessness, anhedonia, obsessive thoughts, bad temper, racing thoughts, lability, uncontrolled crying, decreased libido, impulsivity, chronic pain worsened by depression, and compulsive overeating.  (*Id*.).  She described plaintiff's observed cognitive status as poor concentration, easily distracted, ineffective coping, impatient, and easily angered.  (*Id*.).

As to plaintiff's social interactions, Ms. Hammond indicated that plaintiff had relationship problems and poor motivation, was easily angered, and cried easily.  (*Id*.).  In describing plaintiff's ability to tolerate stress, Ms. Hammond stated that plaintiff had overdosed twice when her stress levels became unmanageable.  (*Id*.).  Ms. Hammond opined that plaintiff would be markedly limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within ordinary tolerances; to complete a normal work day and work week without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and to accept instructions and respond appropriately to criticism from supervisors.  (Tr. 776).  Ms. Hammond also opined that

plaintiff would be moderately limited in her ability to understand, remember and carry out short and simple instructions, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, interact appropriately with the general public, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and remain on task to complete simple and repetitive tasks for uninterrupted two hour periods of time, without breaks.  (*Id.*).  Ms. Hammond concluded that plaintiff was unable to work and would not be able to perform work duties.  (Tr. 777).

### b. Resolution

In determining disability, the Commissioner must consider evidence from all "medical sources," SSR 06-03p, 2006 WL 2329939, *1 (August 9, 2006), which includes both "acceptable medical sources" and health care providers who are not "acceptable medical sources."  *Id.* [6]

---

[6] The undersigned acknowledges that SSR 06-03p was rescinded effective March 27, 2017.  Nevertheless, the undersigned finds that the Ruling applies to plaintiff's claim, which was filed before the effective date of the rescission.  The relevant Social Security regulation, which was revised on January 18, 2017, specifies that the revised regulation applies to claims filed "on or after March 27, 2017."  20 C.F.R. § 404.1504 (January 18, 2017).  The regulations states:

> Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are blind or disabled under our rules.  Therefore, in claims filed (*see* § 404.614) *on or after March 27, 2017*, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits.  However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim. . . .

20 C.F.R. § 404.1504 (January 18, 2017) (emphasis added).  As recently explained by one court:

> If the agency will not provide analysis of other agency decisions for claims filed *after* March 27, 2017, this Court can only conclude that the revised Rule requires the agency to provide such analysis for claims filed *before* that date.  This conclusion is bolstered by the explanation given in the Notice of Rescission:  "The final rules revised these policies [in SSR 06-3p] for claims filed on or after March 27, 2017. . . ."  82 Fed. Reg. 15,263-01.  Again, the Court concludes that if the polices in SSR 06-3p were revised for claims filed *after* March 27, 2017, those policies remain in effect for

(citing former 20 C.F.R. §§ 404.1502, 416.902); *Id*. at *4 (the Commissioner must "consider all of the available evidence in the individual's case record in every case").  Licensed physicians and licensed or certified psychologists are "acceptable medical sources."  *Id*. at *1-2 (citing former 20 C.F.R. §§ 404.1513(a), 416.913(a)).  A certified nurse practitioner like Ms. Hammond is not an "acceptable medical source" but falls into the category of "other source."  *See* former 20 C.F.R. § 404.1513(d)(1); *see also* SSR 06-03p, 2006 WL 2329939, at *2 (nurse practitioners are "'[m]edical sources' who are not 'acceptable medical sources'").  For claims filed prior to March 27, 2017, only "acceptable medical sources" as defined under former 20 C.F.R. § 404.1513(a) can provide evidence which establishes the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight.  SSR 06-03p, 2006 WL 2329939, at *2.  Information from "other sources" cannot establish the existence of a medically determinable impairment, but information they give "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."  *Id*.  Their opinions "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."  *Id*. at *3.

The same factors that apply to the evaluation of medical opinions of "acceptable medical sources" are also applicable to opinion evidence provided by "other sources."  *Id*. at *4 (citing 20

---

claims filed *before* that date. The Court finds that, for applications filed before March 27, 2017, the ALJ was required to consider the VA disability determination and explain the consideration given to that decision.

*Johnson v. Saul*, No. 3:18-cv-01106, 2020 WL 1329915, at *3 (M.D. Tenn. Mar. 23, 2020).

C.F.R. § 404.1527(d)).  Factors to be considered in evaluating opinions from "other sources" who have seen the claimant in their professional capacities include how long the source has known the individual; how frequently the source has seen the individual; how consistent the opinion of the source is with other evidence; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment; and any other factors that tend to support or refute the opinion.  *Id.* at *4-5.  *See also Cruse v. Comm'r of Social Sec.*, 502 F.3d 532, 541 (6th Cir. 2007).  Not every factor will apply in every case.  *See* SSR 06-03p, 2006 WL 2329939, *5.  The ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case."  *Id.* at *6.

The ALJ reasonably considered Ms. Hammond's treatment records as a whole and explained his reasons for assigning "little weight" to her opinion.  The ALJ gave Ms. Hammond's functional assessment of plaintiff's abilities "little weight" on several grounds, each of which is supported by substantial evidence.

First, the ALJ correctly determined that Ms. Hammond was not an "acceptable medical source" under the applicable rules and regulations "for the purposes of providing a controlling opinion."  (Tr. 29).  *See* former 20 C.F.R. § 404.1513(d)(1) (medical sources not listed in § 1513(a), such as nurse practitioners, are considered to be "other sources" rather than "acceptable medical sources").  For this reason, the ALJ was not bound to accept Ms. Hammond's opinion on plaintiff's functional capacity or give it controlling weight.  *See* SSR 06-03p, 2006 WL

2329939, at *2 (Aug. 9, 2006). Instead, as explained below, the ALJ properly considered Ms. Hammond's opinion and evaluated the opinion in light of the record as a whole.

Second, the ALJ considered and reasonably rejected Ms. Hammond's July 2017 opinion that plaintiff was "unable to work." (Tr. 777). As the ALJ correctly determined, the opinion that plaintiff is disabled is one reserved to the Commissioner. (Tr. 29). Whether a person is disabled within the meaning of the Social Security Act, i.e., unable to engage in substantial gainful activity, is an issue reserved to the Commissioner, and a medical source's opinion that her patient is "disabled" or "unable to work" is not "giv[en] any special significance." 20 C.F.R. § 404.1527(d)(3). *See Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2008) (opinion by medical source on issues reserved to Commissioner is never entitled to controlling weight or special significance); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Therefore, Ms. Hammond's opinion that plaintiff is "unable to work" is not entitled to any special weight.

Third, the ALJ reasoned, "More importantly, Ms. Hammond did not pursue an aggressive treatment course consistent with her proposed limitations." (*Id.*). Plaintiff argues that the ALJ erred when he failed to define the phrase "aggressive course" in weighing Ms. Hammond's assessment. (Doc. 12 at PAGEID 1864). However, "[t]here is no requirement under Sixth Circuit precedent or the Social Security Regulations that the ALJ include a definition for terms used within their common meaning." *Curry v. Comm'r of Soc. Sec.*, No. 3:17-cv-421, 2018 WL 4208864, at *4 (W.D. Ky. Sept. 4, 2018) (where the court examined the ALJ's use of the phrase "conservative"). The ALJ appropriately considered the type of treatment plaintiff received, and

whether that treatment was consistent with the "marked" limitations identified by Ms. Hammond. It is entirely reasonable for an ALJ to consider whether a claimant receives conservative medical treatment, or conversely, aggressive treatment, in weighing allegations of total disability. *See Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (concluding that the ALJ reasonably discounted a doctor's opined limitations where, among other things, the plaintiff was receiving conservative treatment); *Myatt v. Comm'r of Soc. Sec.*, 251 F. Appx 332, 335 (6th Cir. 2007). *Cf. McKenzie v. Comm'r of Soc. Sec.*, 215 F.3d 1327, No. 99-3400, 2000 WL 687680, at *4 (6th Cir. May 19, 2000) ("Plaintiff's complaints of disabling pain are undermined by his non aggressive treatment").

Plaintiff also alleges that the ALJ's determination that her treatment was not "aggressive" is without support in the record. (Doc. 12 at PAGEID 1864). The Court disagrees.

The ALJ reasonably determined that plaintiff's treatment regimen did not reflect the seriousness of the "marked" limitations proposed by Ms. Hammond. The ALJ appropriately considered the frequency and type of plaintiff's treatment with Ms. Hammond. *See* SSR 06-03p, 2006 WL 2329939, at *3; 20 C.F.R. § 404.1527(c)(2). As the ALJ noted, plaintiff followed up with Ms. Hammond generally every six to eight weeks for therapy. (Tr. 29). Though plaintiff was twice hospitalized in late 2015 for her mental health impairments and her medications were periodically adjusted, plaintiff's treatment regimen and treatment goals remained constant. (Tr. 1710). As the ALJ noted, by March 2016, plaintiff reported feeling better with compliant treatment and contemplated returning to nursing work. (Tr. 29, 1694, 1700). In June 2016, as the ALJ also noted, plaintiff reported taking her medication less frequently than prescribed,

which resulted in an increase of her symptoms. (Tr. 26, 1683). The ALJ further noted that despite the complaints by plaintiff of an increase in symptoms, she did not require a departure from her conservative mental health treatment course. (Tr. 26, citing Tr. 1605-1730). Plaintiff has not cited any evidence that would call into question the ALJ's findings in this regard.

Finally, plaintiff alleges the ALJ improperly "cherry-picked" the evidence in finding that Ms. Hammond's progress notes failed to document marked limitations in functioning. (Doc. 12 at PAGEID 1863-1864). Plaintiff cites to treatment notes documenting suicidal thoughts, periods of mania, irrational fears, anxiety, impulsivity, and emotional lability. (*Id.*, citing Tr. 1729, 1716, 1711, 1688, 1683, 1677, 1667, 1650, 1637). Plaintiff contends the ALJ erred by failing to consider or discuss substantial evidence in support of his decision. (Doc. 12 at PAGEID 1864).

The Commissioner's decision cannot be upheld if the ALJ relied on a "selective review" of the record to justify his decision. *Howard v. Barnhart*, 376 F.3d 551, 554 (6th Cir. 2004) (decision not substantially justified where ALJ relied on selective review of the record); *Castello v. Commr. of Soc. Sec.*, No. 5:09-cv-2569, 2011 WL 610590, at *5 (N.D. Ohio Jan. 10, 2011), *report and recommendation adopted sub nom. Castello ex rel. Castello v. Comm'r of Soc. Sec.*, 2011 WL 610138 (N.D. Ohio Feb. 10, 2011) (where ALJ disregards and engages in a selective review of the record evidence, the decision lacks substantial support)). "[I]f there is conflicting evidence which is material to the outcome of the case, but the ALJ fails to resolve it, the denial of benefits is not substantially justified." *McClellan v. Comm'r of Soc. Sec.*, No. 2:10-cv-118, 2012 WL 7822215, at *3 (E.D. Tenn. Jan. 26, 2012), *report and recommendation adopted sub*

*nom. McClellan v. Astrue*, 2013 WL 1292667 (E.D. Tenn. Mar. 28, 2013) (citing *Howard*, 376

F.3d at 554).  However, the ALJ does not improperly engage in a selective review of the

evidence merely by resolving inconsistencies in the record unfavorably to the plaintiff's position.

*Shanks v. Colvin*, No. CV 14-42, 2015 WL 5674872, at *6 (E.D. Ky. Aug. 31, 2015), *report and*

*recommendation adopted,* 2015 WL 5682350 (E.D. Ky. Sept. 25, 2015); *Solembrino v. Astrue*,

No. 1:10-cv-01017, 2011 WL 2115872, at *8 (N.D. Ohio May 27, 2011) (an ALJ "does not

'cherry pick' the evidence merely by resolving some inconsistencies unfavorably to a claimant's

position.").  Further, the ALJ is not required to "discuss every piece of evidence in the record[.]"

*Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v.*

*Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)).

        Here, plaintiff has not shown that the ALJ erred by engaging in a selective review of the

evidence.  The ALJ thoroughly considered the evidence of plaintiff's mental health symptoms

and limitations and resolved the conflicts in the evidence.  The ALJ fashioned an RFC that

included restrictions to account for plaintiff's mental health symptoms, including restrictions to

simple and routine tasks in a work environment free of fast production rate or pace work and

with only occasional changes in the work setting; occasional decision making; and no contact

with the public, only occasional contact with supervisors, and occasional and superficial contact

with co-workers.  (Tr. 22).  The ALJ acknowledged that plaintiff complained of persistent mental

health symptoms during her treatment with Ms. Hammond, as well as her hospitalizations for

increased depression and suicide attempt.  (Tr. 26-27).  The evidence substantiates plaintiff's

claim that she suffers from severe mental impairments and symptoms, but the evidence does not

suffice to demonstrate that the ALJ erred in evaluating her claim of disability.  The ALJ noted that there was evidence that suggested plaintiff's symptoms and mental impairments were not as debilitating as alleged in Ms. Hammond's report, including notations of improvement in plaintiff's symptoms when she was medication compliant (Tr. 1641, 1656, 1672, 1694), her activities in caring for and interacting with family members (Tr. 26, 27, 1641), and findings of a psychiatric assessment in May 2017 in which plaintiff's mental status examination was mostly normal.  (Tr. 27, 1220-21).  In addition, while plaintiff consistently displayed a depressed mood and anxious affect on mental status examination with Ms. Hammond, she did not always, and her other psychiatric findings were largely within normal limits during their sessions.  (Tr. 1638, 1642 ["mood normal, affect appropriate"], 1654, 1659, 1664 ["rapidity of thinking present"], 1675, 1691, 1697, 1703 ["rapidity of thinking present" and "vague suicidal ideation present"], 1709, 1714, 1719, 1724 ["rapidity of thinking present"; "mood normal"; "affect appropriate"], 1729).  The ALJ reasonably resolved the conflicts in the evidence, and his resolution does not amount to a selective review of the evidence.  The Court must defer to the ALJ's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ."  *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997)).  The record, considered as a whole, substantially supports the ALJ's decision to give Ms. Hammond's opinion "little weight."  Plaintiff's second assignment of error should be overruled.

**III. Conclusion**

For the reasons stated herein, the undersigned recommends that the ALJ's decision

should be **AFFIRMED** and that this matter be closed on the docket of the Court.


Date:   1/25/2021                              *Karen L. Litkovitz*
                                               Karen L. Litkovitz
                                               United States Magistrate Judge

24

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

CARRIE A. PITTS,                                Case No. 1:19-cv-1003
      Plaintiff,                           Cole, J.
                                                Litkovitz, M.J.

      vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.


**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

25